Harry P. Dilkes v. Commissioner.
Dilkes v. Commissioner
Docket No. 20618.
United States Tax Court
1950 Tax Ct. Memo LEXIS 168; 9 T.C.M. (CCH) 530; T.C.M. (RIA) 50157; June 27, 1950
*168 H. Eugene Heine, Esq., 2305 Philadelphia Savings Fund Bldg., 12 S. 12th St., and Andrew B. Young, Esq., 1222 Real Estate Bldg., both of Philadelphia 7, Pa., for the petitioner. John A. Newton, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in 1944 income tax of $5,451.88 and a negligence penalty for that year amounting to $272.59. The deficiency results from respondent's determination that petitioner and his wife were not engaged in business as partners in 1944. Both the deficiency and the penalty are contested. Findings of Fact Petitioner is a resident of Philadelphia, Pennsylvania. His income tax return for 1944 was filed with the collector of internal revenue for the first district of Pennsylvania. For several years prior to 1939 petitioner was employed as a salesman for several different electrical supply firms, including General Electric, Westinghouse, and Rumsey Electric Company. Thereafter, he worked as a salesman for Standard Circulator Corporation, which manufactured water circulation equipment and sump pumps. Petitioner ceased his employment with that company in 1940 and went into business *169 for himself, selling sump pumps which he purchased outright from Standard, or its successor. After 1941 the business was operated in the name of Neptune Manufacturing Company. The sump pumps which petitioner sold often proved unsatisfactory. Many of petitioner's customers made complaints and requested adjustments. Because of these conditions and of the small profits on his sales, petitioner found that he could not continue in business under the present circumstances. At that time his wife, Helen Dilkes, undertook to help him. She had not worked since 1925, prior to her marriage to petitioner. She had a mechanical turn of mind, although no training or experience along that line, and thought that she could help petitioner correct the defects in the pumps which he was handling. A sump pump is a device consisting of a small pump powered, usually, by an electric motor which is used for removing surplus water from basements and other depressions. The pump works automatically when the water reaches a certain depth. The pumps themselves contain only a few working parts and are of simple construction. They do not involve the use of any patents. The pumps which petitioner had been selling *170 were noisy and undependable. Petitioner and his wife began dismantling the pumps, examining the mechanisms and experimenting, with the idea of eliminating the defects. They worked first in their apartment and later in the house of a friend who had lent them the use of her basement for that purpose. After considerable experimentation, petitioner and his wife, neither of whom had any particular knowledge of mechanics, were able to discover and correct some of the defects in the pumps. These improvements were installed from time to time in the pumps that petitioner sold. The business was continued on a small scale and with meager results for several years. Some time in 1941 the petitioner stopped buying pumps from Standard and began assembling his own pumps. He arranged with a local foundry to furnish some of the parts on a credit basis. Neither petitioner nor his wife had funds of their own to invest in the business. They both borrowed small amounts of money from time to time from their respective families, which they used both for living and business expenses. About the middle of 1941 petitioner's wife secured a part-time job but continued in her off hours and sometimes at night *171 to help petitioner assemble and handle the pumps. She became ill in 1942 and required hospitalization. Following her recovery she continued to assist the petitioner and spent a considerable portion of her time at his place of business. She never received any salary or other compensation for her services. After occupying the basement for about a year, petitioner moved his work shop to a blacksmith shop which he rented for $15 per month. Later, he moved from the blacksmith shop to a two-car garage for which he paid $20 a month. In 1944 he purchased a business site, paying about $1,500 cash and giving a mortgage note for a like amount. The cash with which petitioner made the purchase was part of a legacy which was left him by an aunt who died in 1943. There was a building on the new site which required extensive repairs. These were paid for out of profits from the business. Title to this property was first taken in the name of petitioner alone but was later changed to the names of petitioner and his wife jointly. This change was made on June 29, 1945. On April 14, 1941, petitioner opened an account in the Wyoming Bank and Trust Company in the name of Standard. In that same year *172 the name of the account was changed to Neptune Manufacturing Company. The petitioner was the only person authorized to draw on that account. Petitioner on May 3, 1944, filed with the bank pursuant to its rules a statement reading in part as follows: "The undersigned desires to establish with your Company a deposit and checking account under the name of NEPTUNE MANUFACTURING COMPANY and each of the undersigned hereby certifies that said name is a trade, assumed, partnership, or fictitious name used in the conduct of an unincorporated business, owned entirely by the undersigned, and registered as follows: Philadelphia County, on June 1941 C.P. #6,… Term, 1941, No. 288 Secretary of the Commonwealth, on… No. "Checks, orders, drafts, notes, bills of exchange and trade acceptances for the payment of money against said account may be signed by: HARRY P. DILKES" The above statement was signed by petitioner only. On June 28, 1945, the account was changed to a partnership account on which both petitioner and his wife were authorized to draw. About 1942 the business began to show promise of success. Most of the defects in the pumps had been eliminated and sales were increasing. *173 Petitioner was then purchasing or manufacturing all of the parts and was assembling his own pumps. A production report for 1943 filed with the Pennsylvania Department of Internal Affairs by Neptune Manufacturing Company shows three wage employees and one salaried officer regularly employed by the company. It also shows a production of 1,430 pumps manufactured during the year of a value of $41,950. Prior to 1941 petitioner and his wife kept no books or records of any kind. Beginning in that year a ledger account was kept in which the purchases and sales were posted either by the petitioner or his wife. Later on, a part-time employee assisted with the bookkeeping. In the summer of 1942 an accountant was engaged to open a proper set of books. Thereafter, he called once a month to see that they were properly kept. The accountant set up a capital account in the name of Harry P. Dilkes, with an opening inventory of $2,243.22. He also set up a drawing account for petitioner. Petitioner's capital account showed balances of $20,237.34 at the end of 1943 and $26,566 at the end of 1944. No capital account or drawing account was set up for petitioner's wife at that time. Prior to the close *174 of 1944 all withdrawals of monies from the business were made by petitioner, although he divided the funds with his wife according to their needs or wishes. Early in 1945 a "tax man" was called in to assist in the preparation of petitioner's 1944 return. At his suggestion, a capital account and a drawing account were opened in the name of Helen Dilkes. Also, at his suggestion, a written partnership agreement was executed by petitioner and his wife under date of July 2, 1945. This agreement provides in part as follows: "WHEREAS, the parties have been engaged in business together for some years, and "WHEREAS, the parties now desire to enter into a formal partnership under a written agreement, they have formally set up their books on a partnership basis as shown by the schedule of Assets and Liabilities attached hereto and made a part hereof, and now, therefore, in consideration of these premises and of the mutual promises of each other, it is hereby agreed: * * *
"3 - An account in the name of the Partnership shall be maintained in such bank or banks in Philadelphia, Pa., as the parties hereto shall from time to time elect, and all checks drawn thereon shall be signed by *175 either partner. "4 - After withdrawal of $50.00 each weekly for management, Profit and Losses are to be shared in the respective shares of HARRY P. DILKES
60%
HELEN K. DILKES
40%" A credit entry was made in the capital account under date of December 31, 1944, of $10,581, representing one-half of the profits of the business for 1944. By a correcting entry made under the same date the opening entry was changed to $8,465, which was only 40 per cent of the 1944 profits. The drawing account was set up in the name of Helen Dilkes, as of July 31, 1945. The account shows withdrawals by her each month thereafter. In quarterly employer's tax returns which petitioner filed with the United States Treasury under the Federal Insurance Contributions Act for each of the years 1942, 1943, and 1944 he represented himself as the sole owner of Neptune Manufacturing Company. He also represented himself as the sole owner of the business in financial statements submitted to Dun & Bradstreet, Inc., dated October 3, 1944, and May 1, 1945, and in a similar financial statement which he filed with Westinghouse Electric & Manufacturing Company on November 1, 1944. Petitioner and his wife *176 filed a joint income tax return for 1942. For 1943 petitioner filed a separate return in which he reported income of $14,143.09, including all of the profits of Neptune Manufacturing Company for that year, amounting to $14,115.59. Petitioner claimed a personal exemption of $1,200 in his return for that year. Helen Dilkes filed no return for 1943. For 1944 petitioner and his wife filed separate returns. Petitioner reported 50 per cent of the profits of Neptune Manufacturing Company for that year, amounting to $10,581.41, and his wife reported 40 per cent, amounting to $8,465.13. Ten per cent of the company's profits remained unreported. Neptune Manufacturing Company filed a partnership return for 1945. It had filed no return in prior years. There was no negligence or intentional disregard of rules and regulations, on petitioner's part, in the filing of his 1944 return. During 1944 petitioner and his wife, for tax purposes, were not partners in the Neptune Manufacturing Company. Opinion LeMIRE, Judge: The principal issue in this case is whether petitioner and his wife were partners during 1944 in the business conducted under the name Neptune Manufacturing Company. We have found *177 that they were not. The evidence, we think, fails to meet the tests for a husband and wife partnership laid down by the United States Supreme Court in Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293, and Commissioner v. Culbertson, 337 U.S. 733, namely, that the parties must in good faith have intended to carry on the business as partners and have formed a business partnership, each contributing capital or services, or both, to the enterprise. There is lacking in the evidence before us any convincing proof that petitioner and his wife formed any partnership prior to or during 1944 or that they intended to do so. No formal partnership agreement was entered into prior to the close of 1944 and the conduct of the parties does not indicate that there was any informal agreement up to that time. No partnership accounts of any kind were set up in the books and there was no division of profits on a partnership basis. Petitioner's wife did not participate in the management of the business and she exercised no control over the income derived from it. She testified that petitioner divided with her the money which he withdrew *178 from the business but there is no specific evidence of what amounts she received. She also testified that she and petitioner always had an understanding that they were equal partners in the business. The many cases involving the question of the existence of family partnerships make it plain that something more is required for a husband and wife business partnership than a mere understanding that they are to have equal shares in the family fortunes. As stated above, there must be a definite intention to carry on the business as partners, an actual partnership agreement, a share in the control of the business and an actual division of profits in accordance with the partnership agreement. There is no doubt that petitioner's wife gave valuable and commendable support to the petitioner in the early years of his struggle to establish the business and that she is due much of the credit for its success. However, the evidence fails to show that prior to 1945 there was any definite agreement between them, or any intention on their part, to join together in a business partnership. We can reach no other conclusion on the evidence before us than that the partnership agreement entered into *179 in 1945 was the first such agreement and that it was given the appearance of formalizing a pre-existing partnership agreement at the suggestion of the tax consultant and for the purpose of reducing petitioner's income tax for 1944. The respondents' imposition of the negligence penalty is said to be due to petitioner's failure to report in 1944 60 per cent of the alleged partnership income to which he was entitled under the 1945 partnership agreement. Petitioner's wife reported 40 per cent of the income and petitioner 50 per cent, leaving 10 per cent unreported. This, apparently, was due to an oversight on the part of the tax consultant who assisted in the preparation of the returns for that year. The testimony of petitioner and his wife is that for 1944 and prior years they agreed to divide the profits from the business equally but that this changed to a 60-40 per cent basis in the formal partnership agreement which was executed in 1945. The penalty imposed by section 293(a), Internal Revenue Code, is for "negligence, or intentional disregard of rules and regulations." If there had existed an equal partnership between petitioner and his wife during 1944 petitioner *180 would have been required to report only 50 per cent of the income. If he made the return on that basis in good faith, and there is no evidence that he did not, he should not be charged with either negligence or intentional disregard of rules and regulations. Although we have found that no partnership between petitioner and his wife existed up to the close of 1944, that is not grounds for saying that the filing of returns on that basis shows negligence. To hold otherwise would subject to a negligence penalty every taxpayer who prepares a return under misconception of his rights under the law. Since petitioner and his wife apparently intended to report their 1944 income from Neptune Manufacturing Company on a 50-50 per cent partnership basis, the omission of income was on her return and not on petitioner's. The petitioner reported his 50 per cent. His wife is not before us in this proceeding. Except for the imposition of the negligence penalty, the respondent's determination of petitioner's tax liability for 1944 is sustained. Decision will be entered under Rule 50.